**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **SARA ROBERTS,** *et al.*, **on behalf of** | ) | |
| **themselves and all other similarly situated** | ) | |
| **current and former employees,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 3:14-CV-2009** |
| | ) | **Judge Aleta A. Trauger** |
| | ) | |
| **CORRECTIONS CORPORATION OF** | ) | |
| **AMERICA and CCA of TENNESSEE, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM</u>**

Pending in this case are three motions. Defendants Corrections Corporation of America and CCA of Tennessee, LLC (together, "CCA") have filed a Motion to Partially Dismiss Plaintiffs' Second Amended Complaint ("Motion to Dismiss") (Docket No. 45), to which the plaintiffs have filed a Response (Docket No. 56), and CCA has filed a Reply (Docket No. 66). The plaintiffs have filed a Motion for Approval of 29 U.S.C. § 216(b) Notice and Consent Forms and to Order Disclosure of Current and Former Employees ("Motion for Conditional Certification") (Docket No. 26), to which CCA filed a Response (Docket No. 48), the plaintiffs filed a Reply (Docket No. 61), and CCA filed a Sur-Reply (Docket No. 68.) CCA's Sur-Reply included a Motion to Strike certain affidavits submitted by the plaintiffs with their Reply, and the plaintiffs filed a Response to the Sur-Reply and Motion to Strike (Docket No. 70). For the following reasons, the Motion to Dismiss will be denied, the Motion for Conditional Certification will be granted in part and denied in part, and the Motion to Strike will be denied.

## FACTS AND PROCEDURAL BACKGROUND

This case, brought under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, involves the alleged failure of CCA to pay certain of its employees for overtime work.[1]  More specifically, this action is brought by a group of individual plaintiffs employed by CCA in the three years prior to the filing of this lawsuit, and on behalf of all other similarly situated current and former CCA employees, that were all allegedly misclassified by CCA as "exempt" from overtime requirements of the FLSA.  The targeted positions are Training Manager, Assistant Training Manager, Shift Supervisor, Assistant Shift Supervisor, Unit Manager, Safety Manager, Investigator, and Accountant ("CCA Positions").

CCA is a Maryland corporation with corporate headquarters in Nashville, Tennessee.[2] CCA is the nation's largest owner of privatized correctional and detention facilities and one of

---

[1] Facts are taken from the Second Amended Complaint (Docket No. 44) and are assumed to be true for purposes of evaluating the motion to dismiss.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[2] The initial defendant in this action was Corrections Corporation of America.  (*See* Docket No. 1).  In the first Motion to Dismiss, the defendant asserted that the plaintiffs had incorrectly identified the proper defendant, which the defendant claimed was CCA of Tennessee, LLC.  (*See* Docket No. 13 at p. 1.)  The Plaintiffs' Amended Complaint added CCA of Tennessee, LLC, as a defendant, but also retained Corrections Corporation of America.  (*See* Docket No. 22.)  The Amended Complaint referred to the two defendants as essentially a unified party (*i.e.*, "CCA") for all purposes throughout.  (*Id.*)  The defendants thereafter filed a Partial Motion to Dismiss for failure to state a claim in which they (1) noted that the plaintiffs had added CCA of Tennessee, LLC, as a defendant, (2) did not object to the fact the Corrections Corporation of America remained as a defendant, and (3) stated that they would use the collective term "defendants."  (*See* Docket No. 30 at p. 2 n.1.)  In the pending Motion to Dismiss, CCA is apparently again content to accept the plaintiffs' definition, set forth in the Second Amended Complaint, of the two defendants as essentially a unified entity for pleading purposes, (*see* Docket Nos. 46, 66).  This appears to be so despite the fact that the defendants challenge the unity of the defendants in the Answer that was filed in response to the portion of the Second Amended Complaint not subject to the pending Motion to Dismiss.  (*See* Docket No. 58.)  Accordingly, the court will refer to the defendants as the unified entity "CCA" herein.

the largest prison operators in the United States, behind only the federal government and three states. CCA currently owns or controls fifty-three correctional and detention facilities and manages thirteen additional facilities owned by CCA's government partners, with a total design capacity of approximately eighty-six thousand beds in twenty states (including Tennessee) and the District of Columbia ("CCA Facilities").

Plaintiff Sara L. Roberts is a resident of McNairy County, Tennessee, and was employed by CCA from March 24, 1993 to October 27, 2011. During the three years prior to filing suit, Roberts was employed by CCA as a Training Manager at CCA's Hardeman County Correctional Center Facility located in Whiteville, Tennessee ("HCCF"). As a Training Manager, Roberts was scheduled to work forty hours per week. She was classified by CCA as exempt from the requirements of the FLSA, was paid a salary without overtime compensation, and regularly and repeatedly worked in excess of forty hours per week.

Plaintiff Robin Thomas is a resident of Fayette County, Tennessee, and was employed by CCA beginning in 2008 and ending on May 15, 2014. During the three years prior to filing suit, Thomas was employed by CCA as an Accountant at HCCF. As an Accountant, Thomas was scheduled to work forty hours per week. She was classified by CCA as exempt from the requirements of the FLSA, was paid a salary without overtime compensation, and regularly and repeatedly worked in excess of forty hours per week.

Plaintiff Machelle Brush is a resident of Fayette County, Tennessee, and was employed by CCA from October 1998 to December 2011. During the three years prior to filing suit, she was employed by CCA as an Investigator at HCCF. As an Investigator, Brush was scheduled to work forty hours per week. She was classified by CCA as exempt from the requirements of the

FLSA, was paid a salary without overtime compensation, and regularly and repeatedly worked in excess of forty hours per week.

Plaintiff Charles Reece is a resident of Haywood County, Tennessee, and was employed by CCA from 2002 to 2006 and again from 2007 to 2014. During the three years prior to filing suit, Reece was employed by CCA as Unit Manager at HCCF. As a Unit Manager, Reece was scheduled to work forty hours per week. He was classified by CCA as exempt from the requirements of the FLSA, was paid a salary without overtime compensation, and regularly and repeatedly worked in excess of forty hours per week.

Plaintiff Melissa Nuce is a resident of Orange County, North Carolina, and was employed by CCA from August 1998 to July 27, 2012. During the three years prior to filing suit, Nuce was employed by CCA as a Training Manager at West Tennessee Detention Facility (located in Mason, Tennessee) ("WTDF"). As a Training Manager, Reece was scheduled to work forty hours per week. She was classified by CCA as exempt from the requirements of the FLSA, was paid a salary without overtime compensation, and regularly and repeatedly worked in excess of forty hours per week.

Plaintiff James Polk is a resident of Hardeman County, Tennessee, and was employed by CCA from 1997 through February 2014. During the three years prior to filing suit, Polk was employed by CCA as a Shift Supervisor and as a Unit Manager at HCCF. As a Shift Supervisor, Polk was scheduled to work eighty-four hours every two weeks in twelve hour shifts. Polk was scheduled to work thirty-six hours one week and forty-eight hours the next week on an alternating basis. As a Unit Manager, Polk was scheduled to work forty hours per week. In the positions of Shift Supervisor and Unit Manager, Polk was classified by CCA as exempt from the

requirements of the FLSA, was paid a salary without overtime compensation, and regularly and repeatedly worked in excess of forty (40) hours per week.[3]

CCA is an entity involved in interstate commerce.[4]

According to the Second Amended Complaint, the plaintiffs and other similarly situated employees regularly worked in excess of forty hours per week in one or more weeks without being compensated at the rate of one and one-half times their regular rate of pay. Specifically, the Second Amended Complaint alleges that CCA classifies, and at all times relevant to this action has classified, the CCA Positions as "exempt" from the overtime requirements imposed by the FLSA. However, it also alleges that the job duties of the plaintiffs and other similarly situated employees are such that they are not exempt from the overtime requirements of the FLSA.[5] The Second Amended Complaint alleges that employees in the CCA Positions (1) performed job duties that did not consist of managing CCA, a department of CCA, or a subdivision of CCA; (2) did not have the authority to hire or fire other employees or make

[3] The remaining Named Plaintiffs are all Tennessee residents with the exception of James Fleming, who is a Mississippi resident. CCA does not seek to dismiss them. The Second Amended Complaint provides detail as to their employment history with CCA. (*See* Docket No. 44.) All allege that they were scheduled for 40 or more hours of work per week, were classified by CCA as exempt from the requirements of the FLSA, were paid a salary without overtime compensation, and regularly and repeatedly worked in excess of forty hours per week. All held the position of Assistant Shift Supervisor or Shift Supervisor at one of several CCA Tennessee facilities, with the exception of (1) Kema Kelso, who was a Safety Manager, and (2) Nena Moss, who was an Assistant Training Manager and Training Manager. (*Id.*)

[4] CCA does not dispute this allegation.

[5] As the Second Amended Complaint alleges: "While the CCA [e]mployees are classified as 'exempt' by CCA, they do not have duties and job responsibilities sufficient to exempt them from the FLSA and CCA is unable to bear its burden of showing that the [p]laintiffs and other similarly situated employees fall within any of the FLSA overtime exemptions, including but not limited to those announced in 29 C.F.R. §§ 541.300, 541.301, 541.302, 541.303, or 541.304." (Docket No. 44 at ¶ 39.)

suggestions or recommendations as to hiring, firing, advancement, promotion or any other change of status of other employees of CCA that was given any particular weight; (3) did not manage general business operations; and (4) did not exercise discretion and independent judgment with respect to matters of significance.  Because employees in the CCA Positions have been improperly classified as "exempt" by CCA, the plaintiffs allege that they, and other similarly situated employees, have been denied pay and overtime pay for all work performed by them in excess of forty hours per workweek.  The plaintiffs further allege that CCA has in its possession records showing the hours worked by the plaintiffs and other similarly situated employees that will enable the plaintiffs and other similarly situated employees specifically to identify the weeks in which they worked in excess of forty hours.

Accordingly, the plaintiffs have filed the Second Amended Complaint on behalf of themselves and all similarly situated persons who hold or have held the CCA Positions at the CCA Facilities in the past three years.  On January 23, 2015, CCA filed its Motion to Dismiss the Second Amended Complaint.[6]  (Docket No. 45.)  On February 6, 2015, the plaintiffs filed a

---

[6] The first Complaint in this action was filed on October 21, 2014.  (Docket No. 1.)  CCA filed a motion to dismiss on November 14, 2014, asserting that the Complaint (1) failed to plead facts sufficient to support an actual FLSA violation, and (2) failed to establish coverage under the FLSA.  (Docket No. 13.)  On November 26, 2014, the plaintiffs filed a First Amended Complaint, mooting the motion to dismiss.  (Docket No. 22.)  CCA filed a partial motion to dismiss on December 12, 2014, arguing that the Amended Complaint was still deficient in two areas: (1) it failed to plead facts that would support a finding that CCA willfully violated the FLSA, and (2) it failed to plead FLSA overtime claims for Named Plaintiffs Roberts, Thomas, Brush, Nuce, Reece, and Polk, individually, and, on a collective basis, on behalf of the Classification Coordinator, Safety Manager, Training Manager, Assistant Training Manager, Business Manager, Assistance Maintenance Supervisor, Maintenance Supervisor, Accountant, Investigator, or Unit Manager positions.  (Docket No. 29.)  With permission of the court, the plaintiffs filed the extant Second Amended Complaint, mooting the prior partial motion to dismiss.  (Docket No. 44.)  While the Second Amended Complaint does abandon collective action claims as to certain positions – namely, Classification Coordinators, Business Managers, Maintenance Supervisors, and Assistance Maintenance Supervisors – it does not alter the crux of

Response to the Motion to Dismiss.[7]  (Docket No. 56.)  On February 27, 2015, CCA filed its

Reply.  (Docket No. 66.)

Concurrently with the Second Amended Complaint, the plaintiffs filed a Motion for

Conditional Certification.  (Docket No. 28.)  The motion requests the following relief from the

court:  (1) authorize this case to proceed as a collective action defined as follows: all individuals

who were, are, or will be employed by CCA in the CCA Positions at CCA Facilities nationwide,

including each and every State in the United States where CCA has done business during the

three-year statute of limitations period, and were misclassified as exempt from the provisions of

the FLSA in the past three years, which have not opted-in to any other class or collective action

in other venues, and worked in excess of forty hours per week without overtime compensation;

(2) issue an order directing CCA to provide a list of names, last known addresses, and last known

telephone numbers for all putative class members within the last three years; (3) issue an order

that notice be (a) prominently posted at each CCA Facility where putative class members work,

(b) attached to current CCA employees' next scheduled paycheck, and (c) mailed to CCA

employees (or former employees at their last known address) so that they can assert their claims

on a timely basis as part of this litigation; (4) issue an order tolling the statute of limitations for

the putative class as of the date this action was filed; and (5) order that the opt-in plaintiffs'

consent forms be deemed filed on the date they are postmarked.

On January 23, 2015, CCA filed its Response in opposition to the plaintiffs' Motion for

---

the First Amended Complaint nor eliminate any Named Plaintiffs.  Accordingly, the pending
Motion to Dismiss mirrors CCA's prior motion to dismiss.

[7] Also on February 6, 2015, CCA filed its Answer to the unchallenged portion of the
Second Amended Complaint.  (Docket No. 58)

Conditional Certification. (Docket Nos. 48-49.) On February 17, 2015, the plaintiffs filed a Reply. (Docket No. 61.) In support of the Reply, the plaintiffs attached additional declarations of the same nature as declarations provided with the Motion for Conditional Certification. (Docket No. 61.) On March 6, 2015, with permission of the court, CCA filed a Sur-Reply. (Docket No. 68.) Contained within the Sur-Reply was a Motion to Strike the declarations filed with the plaintiffs' reply brief. (Docket No. 68 at p. 1.) On March 10, 2015, the plaintiffs filed a Response to the Sur-Reply and Motion to Strike. (Docket No. 70.)

## MOTION TO DISMISS

### I.    Legal Standard

When deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *see also Erickson v. Pardus*, 551 U.S. 89, 127 (2007) (reaffirming the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Detailed factual allegations are not required, but a complaint's allegations "must be

enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of

discovery," the plaintiff cannot rely on labels, "legal conclusions" or "[t]hreadbare recitals of the

elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Twombly*, 550 U.S. at 555. "[O]nly a complaint

that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679

(quoting *Twombly*, 550 U.S. at 556).

## II.    <u>Analysis</u>

The FLSA was enacted by Congress to ensure that employers compensated their

employees for their "wear and tear" for working in excess of the statutory maximum number of

hours. *Wood v. Mid-Am. Mmgt. Corp.*, 192 F. App'x 378, 379 (6th Cir. 2006). The Supreme

Court has defined "work" as the physical or mental exertion (burdensome or not) that is

controlled or required by the employer and pursued necessarily and primarily for the benefit of

the employer and his business. *Chao v. Akron Insulation & Supply, Inc.*, 184 F. App'x 508, 510

(6th Cir. 2006) (per curiam) (citing *Tenn. Coal, Iron & R. Co. v. Muscoda*, 321 U.S. 590, 598

(1944)). The FLSA requires that employers compensate their employees for any hours worked

in excess of forty hours per week at a rate of time and one-half. *Thomas v. Speedway*

*SuperAmerica, LLC*, 506 F.3d 496, 501 (6th Cir. 2007); *Schaefer v. Ind. Mich. Power Co.*, 358

F.3d 394, 399 (6th Cir. 2004) (citing 29 U.S.C. §207(a)(1)). However, parties employed in

executive, administrative, professional, or outside sales positions are exempt from the FLSA's

overtime payment requirements. 29 U.S.C. §213(a)(1).[8] *Hopkins v. Chartrand*, 566 F. App'x

445, 2013 WL 2109219, at *2 (6th Cir. 2014); *Elwell v. Univ. Hosp. Home Care Servs.*, 276 F.3d

832, 837 (6th Cir. 2002). The plaintiff initially bears the burden to show that the employees

performed work for which they were not paid. *Herman v. Palo Group Foster Home*, 183 F.3d

468, 472 (6th Cir. 1999); *U.S. Dep't of Labor v. Cole Enters.*, 62 F.3d 775, 779 (6th Cir. 1995).

### A.    Claims Against Plaintiffs Roberts, Thomas, Brush, Nuce, Reece, and Polk

CCA moves for dismissal of plaintiffs Roberts, Thomas, Brush, Nuce, Reece, and Polk,

arguing that the Second Amended Complaint does not plead sufficient supporting facts as

required by *Twombly* and *Iqbal*. Specifically, CCA contends that the Second Amended

Complaint is insufficient and conclusory under the *Twombly* and *Iqbal* standard because it does

not provide details as to "a specific week in which any of these [p]laintiffs actually worked more

than forty hours, nor does it provide a percentage (or even just an estimation) regarding the

number of times when these [p]laintiffs worked more than forty hours in any given week."

(Docket No. 46 at p. 9.) Furthermore, CCA argues that the Second Amended Complaint "fails to

provide any information about the amount of time beyond their scheduled forty-hour workweeks

---

[8] The executive exemption sets forth a "salary basis" requirement and a "primary duties"
requirement. *See* 29 C.F.R. § 541.100. An employee works in a *bona fide* executive capacity,
and is therefore exempt from FLSA protection, when: (1) the employee is compensated on a
salary basis (as defined in the regulations) at a rate not less than $455 per week; (2) the
employee's primary duty is managing the enterprise, or managing a customarily recognized
department or subdivision thereof; (3) the employee customarily and regularly directs the work
of at least two or more other full-time employees; and (4) the employee has the authority to hire
or fire other employees, or the employee's suggestions and recommendations as to the hiring,
firing, advancement, promotion or any other change of status of other employees is given
particular weight. 29 C.F.R. § 541.100(a)(1)-(4). All of the elements must exist for the
exemption to apply. *Brennan v. S. Prods. Inc.*, 513 F.2d 740 (6th Cir. 1975). Furthermore, the
defendant bears the burden of establishing each element of the executive exemption. *Renfro v.
Ind. Mich. Power Co.*, 370 F.3d 512, 515 (6th Cir. 2004).

that these [p]laintiffs spent performing work-related tasks or provide an explanation regarding the type of tasks that these [p]laintiffs performed." In support of its argument, CCA relies upon precedent from several other circuits and suggests that this court should deviate from the current approach of sister district courts within the Sixth Circuit concerning the level of detail that is necessary to plead an FLSA claim. In response, the plaintiffs argue that the Second Amended Complaint is sufficient to survive the Motion to Dismiss because (1) *Twombly* and *Iqbal* do not create a heightened pleading requirement for an FLSA action under Sixth Circuit precedent, and (2) the plaintiffs have sufficiently pleaded the *prima facie* elements of their FLSA claim.

In a broad sense, the level of detail necessary to plead a FLSA overtime claim is unsettled among different courts around the country. *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014); *see also Landers v. Quality Commc'ns*, 771 F.3d 638, 641 (9th Cir. 2014) (observing that "district courts that have considered this question are split"). In 2012, the First Circuit held that a complaint that alleged that the plaintiffs regularly worked hours over 40 in a week and were not compensated for such time was "little more than a paraphrase of the statute" and inadequate under *Iqbal*. *See Pruell v. Caritas Christi*, 678 F.3d 10, 13 (1st Cir. 2012) (criticizing the plaintiffs for not describing the work they performed and for not providing examples and estimates of unpaid time). The next year, in *Lundy v. Catholic Health Sys. of Long Island*, the Second Circuit held that, to satisfy *Iqbal*, an FLSA plaintiff must identify a particular week in which he was not compensated for work exceeding 40 hours. 711 F.3d 106, 113–14 (2d Cir. 2013). In *Davis*, the Third Circuit agreed with the *Lundy* court that "a plaintiff must sufficiently allege [forty] hours of work in a *given* workweek *as well as* some uncompensated time in excess of the [forty] hours." *Davis*, 765 F.3d at 241–42 (emphasis in original) (quoting

*Lundy*, 711 F.3d at 114).  Lastly, the Ninth Circuit recently held that, "in order to survive a motion to dismiss, a plaintiff asserting a claim to overtime payments must allege that she worked more than forty hours in a given workweek without being compensated for the overtime hours worked during that workweek."  *Landers v. Quality Commc'ns., Inc.*, 771 F.3d 638, 644-45 (9th Cir. 2014).

In contrast, however, district courts within the Sixth Circuit have applied a less strict standard, concluding that *Iqbal* and *Twombly* do *not* impose additional pleading requirements in the context of an FLSA claim.  In *Noble v. Serco, Inc.*, No. 3:08–76–DCR, 2009 WL 1811550, at *2 (E.D. Ky. June 25, 2009), the court found that, to state a claim under the FLSA, the plaintiff needed only to allege (1) the existence of an employer-employee relationship, (2) the employee's acts which are protected by the FLSA, and (3) the employer's failure to pay the employee overtime for those acts.  *Id.*  The court rejected the defendant's argument that a complaint must be dismissed where it fails to include factual allegations that the plaintiff worked in excess of forty hours per week in specific weeks and was not paid overtime wages for those weeks.  *Id.* at *3.  The court stated:

> [I]t is not surprising that such facts are not provided in the [c]omplaint. The employer, not the employee, bears the burden of maintaining records of how many hours an employee works each week and the employee's pay rate.  Discovery and analysis of these records is generally necessary for a plaintiff to satisfy his burden. Thus, whether [the plaintiff] can actually establish that he worked in excess of forty hours during *particular weeks* without receiving the required overtime compensation may become an issue for summary judgment after [the defendant's] employment records have been produced in discovery.

*Id.* at *3 (emphasis added).  The court concluded that "following *Twombly* does not mean that the Court must subject [the FLSA] [c]omplaint to a heightened pleading standard."  *Id.* at *2.

Similarly, in *Monroe v. FTS USA*, *LLC*, the court held that the plaintiffs had properly pleaded a FLSA overtime claim simply by alleging that (1) the defendants were employers as defined by the statute, (2) they and other similarly situated employees regularly worked overtime without compensation, and (3) defendants knew that plaintiffs worked overtime and did not pay them for it. *Monroe*, No. 2:08–CV–02100–BBD–DK, 2008 WL 2694894, at *3 (W.D. Tenn. July 9, 2008). The court found that these allegations were sufficient to put the defendants on notice of the grounds upon which the plaintiffs claimed a FLSA violation. *Id.* In doing so, the court also rejected the defendants' arguments that the plaintiffs' complaint was insufficient because it did not allege what particular work the plaintiffs performed, failed to detail the weeks during which the plaintiffs worked overtime, and did not specify the number of hours for which the plaintiffs were not paid overtime compensation. *Id.; accord Carter v. Jackson-Madison Cnty. Hosp. Dist.*, No. 1:10-cv-01155-JDB-egb, 2011 WL 1256625, at *6 (W.D. Tenn. Mar. 31, 2011) (collecting cases, rejecting argument that complaint was inadequate under *Iqbal* and *Twombly* even though it did not allege that the plaintiff worked in excess of forty hours in any particular week, and noting that the plaintiff could use discovery to determine the specific weeks for which she worked more than forty hours but was not properly compensated); *Hellenberg v. Integrated Deicing Servs.*, *LLC*, No. 10-CV-11364, 2011 WL 317733, at *2 (E.D. Mich. Feb. 1, 2011) (observing that, under *Twombly*, "extensive pleading is not required in the context of an FLSA claim" and denying a motion to dismiss where complaint alleged defendant failed to pay plaintiff "for all hours worked in excess of forty hours"); *Mathis v. Quicken Loans Inc.*, No. 07-10981, 2007 WL 3227598, at *6 (E.D. Mich., Sept. 7, 2007) (applying *Twombly* and finding complaint to be sufficient where plaintiffs only alleged that defendants were employers as defined by the

FLSA, briefly described their job functions, and alleged that they routinely worked in excess of forty hours per workweek during the statutory period without overtime compensation).

Recent district court decisions within the Sixth Circuit reflect the same result. *In Miller v. ATT Corporation*, for example, the defendant moved for dismissal relying upon *Twombly* and *Iqbal*, arguing in part that the plaintiff had "fail[ed] to plead when or how many hours he or anyone else allegedly worked off the clock." *Miller*, No. 1:13-CV-01422, 2013 WL 5566698, at *2 (N.D. Ohio Oct. 9, 2013). Again, the district court disagreed, holding: "Plaintiff [ ] says he and others were employed by [the d]efendants, [the] FLSA applies to Defendants, and [that] he and others regularly worked more than [forty] hours a week without compensation. The existing complaint provides Defendants with sufficient notice of the allegations to form a response." *Id.* (footnotes omitted); *see also Potts v. Nashville Limo & Transp.*, No. 3:14-cv-1412, 2014 WL 7180164, at *2 (M.D. Tenn. Dec. 16, 2014) (stating that, in the Sixth Circuit, FLSA plaintiffs "generally are not required to plead with specificity the exact number of hours for which they seek compensation, the exact amount in controversy, or the exact times and dates on which the violations allegedly occurred," and finding the complaint sufficient where it alleged that the plaintiffs worked overtime and did not receive overtime pay); *Kutzback v. LMS Intellibound, LLC*, No. 13-cv-2767-JTF-cgc, 2014 U.S. Dist. LEXIS 126941, at *18 (W.D. Tenn. Sept. 6, 2014) (noting that "[a] simple statement that the employer failed to pay overtime . . . to covered employees is all that is required in order to establish a claim of a FLSA violation" and concluding that "the Sixth Circuit merely requires [pleading] that the employer had actual notice of the FLSA requirements to pay overtime wages and its failure to adhere to them"); *Burton v. Appriss, Inc.*, No. 3:13-CV-00316, 2013 WL 6097107, at *3 (W.D. Ky. Nov. 18, 2013) (finding that *Twombly*

and *Iqbal* required no more from the complaint than pleading allegations of the *prima facie*

FLSA claim – *i.e.*, that the plaintiff was employed by the defendant, that the defendant was an

enterprise engaged in interstate commerce, and that the defendant failed to pay overtime

compensation to the plaintiff for each hour worked in excess of forty hours per week).[9]

Most recently, a district court in the Sixth Circuit explored this issue in *Pope v. Walgreen*

*Co.*, No. 3:14-CV-439, 2015 WL 471006 (E.D. Tenn. Feb. 4, 2015).  In *Pope*, the defendant

argued that the complaint was insufficient under the *Twombly/Iqbal* standard because it was

"devoid of any basic threshold factual allegations about any individual [p]laintiff's employment

. . . such as the dates that any [p]laintiff worked . . . the store(s) that any [p]laintiff oversaw while

in t[heir] position, the number of overtime hours that any [p]laintiff worked in any week, or even

an estimate of any [p]laintiff's weekly hours."  *Id.* at *2.  In support of its argument, the

defendant –  as does CCA here – relied upon recent rulings from other circuits that suggest

---

[9] Additionally, the Eleventh Circuit has considered a similar argument and likewise chose not to read addition pleading requirements into the FLSA.  *See Sec'y of Labor v. Labbe*, 319 F. App'x 761 (11th Cir. 2008).  Applying Rule 8(a) and *Twombly*, the Eleventh Circuit concluded that the factual allegations in the Secretary's complaint were sufficient to withstand a motion to dismiss for failure to state a claim under FLSA.  *Id.* at 763-64.  As the court explained:

> The complaint alleges that Labbe is a covered employer and provides a listing of the specific names of the covered employees. . . . The complaint alleges that since June 16, 2002, Labbe repeatedly violated stated provisions of the FLSA by failing to pay covered employees minimum hourly wages and to compensate employees who worked in excess of forty hours a week at the appropriate rates. . . .  While these allegations are not overly detailed, we find that a claim for relief for failure to pay minimum wage, to provide overtime compensation, or to keep appropriate records under FLSA does not require more.

*Id.*

plaintiffs should be required to plead specific weeks in which they were denied overtime pay.

In *Pope*, the court began by observing that "the Supreme Court continues to recognize that 'the pleading standard Rule 8 announces does not require detailed factual allegations[.]'" *Id.* at *4 (citing *Iqbal*, 556 U.S. at 678). Rather, the court stressed, *Iqbal* speaks to "plaintiff[s] armed with nothing more than conclusions." *Id.* at *4 (citing *Iqbal*, 556 U.S. at 678–79). Under this guiding principle, the court concluded that, "with utmost respect to the appellate courts cited by the defense . . . dismissal of the [ ] complaint would be overly harsh and inconsistent with the requirements of Rule 8(a), *Iqbal* and *Twombly*." *Id.* at *4. The court found that the complaint – which alleged that (1) the FLSA applied to the defendant, (2) the plaintiffs were employed in the defendants' stores, (3) the plaintiffs had duties that related to their misclassification as exempt from overtime requirements, and (4) the plaintiffs regularly worked in excess of scheduled weeks without overtime pay – provided the defendants with sufficient notice of the allegations to form a response. *Id.* Furthermore, the court found that to require the plaintiffs to specify in their complaint a particular week in which they worked more than forty hours with overtime pay would be too rigid and inconsistent with *Iqbal* and *Twombly*. *Id.* at *5. The court found this especially so because, as the Ninth Circuit has indicated, "most (if not all) of the detailed information concerning a plaintiff-employee's compensation and schedule is in the control of the defendants." *Id.* (citing *Landers*, 771 F.3d at 645). The court therefore saw no problem with the plaintiff's decision to plead that they "regularly and repeatedly exceeded their scheduled weekly hours without overtime pay," and denied the motion to dismiss on the grounds that the complaint contained a short and plain statement of the claim showing that the pleader is entitled to relief. *Id.* (citing Fed. R. Civ. P. 8(a)(2)).

In summary, the Sixth Circuit has never directed its district courts to apply the pleading requirements that have recently been read into FLSA claims by several other circuits. To the contrary, the courts within the Sixth Circuit have been clear that extensively detailed factual pleading is not required in the context of an FLSA claim, so long as a defendant is given sufficient notice of the *prima facie* claim that it is being asked to defend. CCA urges this court to abandon the persuasive authority of its sister courts in favor of new interpretations of FLSA pleadings standard from several other circuit courts. However, given the wealth of precedent from district courts in this circuit, the vitality of Federal Rule of Civil Procedure 8(a)(2), and decisions of the U.S. Supreme Court and the Sixth Circuit interpreting *Twombly* and *Iqbal*, this court declines to do so. To the contrary, this court agrees with the *Pope* court that this reading of the law would be overly rigid and harsh and would place a burden on the plaintiffs that is not dictated by *Twombly* or *Iqbal*.

Accordingly, to determine whether the plaintiffs have provided a short and plain statement of their FLSA claim that enables CCA to prepare a response, the court examines whether the Second Amended Complaint contains factual allegations of the *prima facie* elements of the FLSA claim – *i.e.*, that the plaintiff was employed by the defendant, that the defendant was an enterprise engaged in interstate commerce, and that the defendant failed to pay overtime compensation to the plaintiff for each hour worked in excess of forty hours per week. The Second Amended Complaint meets this bar – it includes allegations that (1) the plaintiffs were employed by CCA (Docket No. 44 at ¶¶ 6-22), (2) the plaintiffs were engaged in work (across the CCA Positions) within coverage of the FLSA (*id*. at ¶¶ 6-32, 37-40), (3) the plaintiffs were scheduled to work forty hours per week, regularly worked in excess of forty hours per week, and

were not paid overtime as required by law (*id*. 44 at ¶¶ 6-42), (4) these events occurred in time frames relevant to an action under the FLSA (*id*. at ¶¶ 6-22).[10] This is sufficient – it is not a mere parroting of the statutory language, and it is more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. At this stage, the plaintiffs are not required to allege specific weeks in which they were denied overtime, the amount of compensation they seek, or provide other information that is, more than likely, in the hands of CCA. The Motion to Dismiss will, therefore, be denied as to plaintiffs Roberts, Thomas, Brush, Nuce, Reece, and Polk, and this action will proceed as to all Named Plaintiffs.

**B.**     **Claims on a Collective Basis on Behalf of Accountants, Investigators, and Unit Managers**

CCA also moves to dismiss the collective action claims brought on behalf of several CCA Positions – specifically, all other similarly situated Accountants, Investigators, and Unit Managers. Citing several district court cases from other circuits, CCA contends that, where a plaintiff brings collective action claims on behalf of himself and other similarly situated employees, the complaint must indicate who those other employees are and allege facts that would entitle those other employees to relief.[11] *See* Motion at 11 (citing *Manning v. Boston Med. Center Corp.*, No. 09-11463, 2012 WL 1355673, at *8 (D. Mass. Apr. 18, 2012); *Zhong v.*

---

[10] The Second Amended Complaint also includes additional details, such as salary, positions held, and details concerning classification of positions as exempt by CCA. (*See* Docket No. 44 at ¶¶ 6-22, 37-40.)

[11] CCA also reiterates its argument that the *prima facie* FLSA claim allegations, including "working in excess of forty hours in one or more weeks without being compensated at overtime rate" are insufficient to plead an FLSA claim, this time in the context of claims on behalf of "other similarly situated employees" in the Accountant, Investigator, and Unit Manager positions. For the reasons previously discussed by the court, however, this argument is rejected; the court will not impose heightened pleading requirements under the FLSA.

*August August Corp.*, 498 F. Supp. 2d 625, 628 (S.D.N.Y. 2008)). However, CCA continues to misapprehend the law within the Sixth Circuit. A sister court recently considered the same argument on the need to identify and plead facts as to other similarly situated employees that would entitle them to relief under the FLSA. *See Ambrose v. Northstar Mem'l Grp.*, *LLC*, No. 12-2278-STA-dkv, 2012 WL 3727156, at *3 (W.D. Tenn. Aug. 27, 2012). The court held that the defendant had inaccurately portrayed the level of pleading specificity required to permit a plaintiff to survive a motion to dismiss and file a collective action certification motion: "According to [the d]efendant, [the] plaintiffs would be required to name at least one other member of the potential collective action class in their complaints. Neither this [c]ourt nor the Sixth Circuit require such information at the pleading stage[.]" *Id.* The court warned: "Just as the similarly situated conditional certification requirement is subject to evidentiary standards, a complaint alleging an FLSA collective action on behalf of oneself and others similarly situated is subject to pleading standards."[12] *Id.* The court also observed that the FLSA's text itself defeated the defendant's argument, because Section 216(b) authorizes a *single employee* to bring an action on his or her own behalf or on behalf of "[himself or herself] and other employees similarly situated." *Id.* (citing § 216(b)). Therefore, the FLSA's text expressly provides for complaints with allegations lacking additional factual detail as to the identity of other similarly situated employees at the pleading stage.

The court finds the Second Amended Complaint to be sufficiently pleaded regarding the collective action claims brought on behalf of all other similarly situated Accountants,

---

[12] The Sixth Circuit recently reaffirmed that evidentiary standards are not to be confused with pleading requirements. *Keys v. Humana, Inc.*, 684 F.3d 605 (6th Cir. 2012).

Investigators, and Unit Managers. The express language of the FLSA authorizes the plaintiffs to bring this action on behalf of others similarly situated. The court's concern in connection with the motion to dismiss is the pleading standard, not the higher evidentiary standard. Taking the allegations of the Second Amended Complaint as true, the plaintiffs have given CCA notice of their intent to pursue a collective certification as to a number of CCA Positions represented by the Named Plaintiffs, including Accountants, Investigators, and Unit Managers, which is all that Rule 8(a)(2) requires. The proper vehicle for CCA to make an argument that there is a lack of evidence as to the existence of other similarly situated Accountants, Investigators, and Unit Managers is via the opposition to the Motion for Conditional Certification (or, later, via a second-stage motion for de-certification). Accordingly, the Motion to Dismiss the collective action claims against Accountants, Investigators, and Unit Managers will be denied.

## MOTION FOR CONDITIONAL CERTIFICATION

### I.    FLSA Certification Standard

The FLSA provides that a collective action "may be maintained against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Because the statute only requires that employees be "similarly situated," plaintiffs seeking to certify a collective action under the FLSA face a lower burden than those seeking to certify a class action under Federal Rule of Civil Procedure 23. *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 584 (6th Cir. 2009). Once a collective action is certified, however, employees seeking to join the class must affirmatively "opt into" the litigation by filing a written consent with the court. 29 U.S.C. § 216(b).

The FLSA does not define the term "similarly situated." The Sixth Circuit has noted that

courts have considered "the 'factual and employment settings of the individual[ ] plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, [and] the degree of fairness and procedural impact of certifying the action as a collective action.'" *O'Brien*, 575 F.3d at 584 (quoting 7B Wright, Miller, & Kane, Federal Practice and Procedure § 1807 at 497 n. 65 (3d ed. 2005)) (alterations in original). "[I]t is clear that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *Id.* at 585. But employees may also be similarly situated if their claims are merely "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.* Indeed, "[s]howing a 'unified policy' of violations is not required [for certification]." *Id.* at 584. In *O'Brien*, the Sixth Circuit stated that even a requirement that employees' "causes of action under the FLSA accrued at about the time and place in the approximate manner of the named plaintiff" would be "more demanding than what the [FLSA] requires." *Id.* at 585.

Typically, courts employ a two-phase inquiry to address whether the named plaintiffs are similarly situated to the employees they seek to represent. *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877-78 (6th Cir. 2012); *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006); *O'Brien*, 575 F.3d at 583. "The first [phase] takes place at the beginning of discovery. The second occurs after all of the opt-in forms have been received and discovery has concluded." *Comer*, 454 F.3d at 546 (quotation marks omitted).

At the first stage, the plaintiff bears the burden of showing that employees in the class are similarly situated. *Benson v. Asurion Corp.*, No. 3:10-cv-526, 2010 WL 4922704, at *2 (M.D.

Tenn., Nov. 29, 2010). At that point, "'the certification is conditional and by no means final.' The plaintiff must show only that 'his position is similar, not identical, to the positions held by the putative class members.'" *Comer*, 454 F.3d at 546-47 (quoting *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 595 (S.D. Ohio 2002)). In *Comer*, the Sixth Circuit approvingly quoted the lower court's decision, which stated that conditional certification "'need only be based on a modest factual showing,'" *id.* at 547 (quoting *Pritchard*, 210 F.R.D. at 596), and that the court should use "'a fairly lenient standard [that] typically results in . . . certification,'" *id.* (quoting *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J. 2000)); *see also Shabazz v. Asurion Ins. Service*, No. 3:07-0653, 2008 WL 1730318, at *3 (M.D. Tenn., Apr. 10, 2008) (stating that plaintiffs "must simply submit evidence establishing at least a colorable basis for their claim that a class of similarly situated plaintiffs exist[s]") (quotation marks omitted)); *Mooney v. Aramco Servcs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995) (observing that the standard for collective action notice is a "lenient one"). At this point, the court "does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Brasfield v. Source Broadband Servs., LLC*, 257 F.R.D. 641, 642 (W.D. Tenn. 2009). If the named plaintiffs show that employees in the proposed class are similarly situated, "[t]he district court may use its discretion to authorize notification of similarly situated employees to allow them to opt into the lawsuit."[13] *Comer*, 454 F.3d at 546.

---

[13] In *Hoffmann-LaRoche v. Sperling*, 493 U.S. 165, 170-72 (1989), the Supreme Court made it clear that courts have the power to issue court-supervised notice to other potential class members to inform them that they may opt-in to a FLSA case. Court-ordered notice protects against misleading communications by the parties, resolves the parties' disputes regarding the content of any notice, prevents the proliferation of multiple individual lawsuits, assures joinder of individual parties is accomplished properly and efficiently, and expedites resolution of the dispute. *Id.* Early notice helps the court to manage the case because it can "ascertain the

After discovery, the defendant may move for decertification of the conditional class. *See O'Brien*, 575 F.3d at 583; *Benson*, 2010 WL 4922704 at *3 (citing *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 952 (11th Cir. 2007)). At this second stage, the court has access to more information and employs a "stricter standard" in deciding whether class members are, in fact, similarly situated. *Comer*, 454 F.3d at 547.

## II.    Whether Other Employees are Similarly Situated to the Plaintiffs

The parties dispute whether the plaintiffs have sufficiently shown that they are similarly situated to a class of other employees. In support of their motion, the plaintiffs have submitted declarations of twenty current and former CCA employees, each stating that they were required by CCA to perform uncompensated overtime work.[14]

---

contours of the action at the outset." *Id.*

[14] CCA takes issue with the fact that the plaintiffs submitted fourteen additional declarations with their reply brief. CCA has thus made the Motion to Strike, arguing that the court should strike the fourteen "untimely" declarations as "an improper attempt to submit new evidence in a reply brief." (Docket No. 68 at p.1.) CCA relies on general Sixth Circuit precedent, *see, e.g.*, *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008), for the principle that a reply brief is not the proper vehicle for a plaintiff to submit new evidence or raise issues or arguments for the first time for a court's consideration. The plaintiffs' response is twofold. First, the plaintiffs state that the fourteen declarations submitted with the reply brief were in the course of being prepared at the time the Motion for Conditional Certification was filed and were not included solely because they were not yet available or signed. (Docket No. 70 at p. 2.) Second, the plaintiffs contend that the cases relied upon by CCA are inapposite because the plaintiffs actually made no new arguments in their reply brief. (*Id.* at p. 3.) Rather, the plaintiffs argue, the fourteen additional declarations filed with the reply brief simply (1) support the allegations contained in the Second Amended Complaint and the earlier declarations filed by the plaintiffs, and (2) rebut the arguments advanced by CCA in their Response. (*Id.*) After careful review, the court agrees. The additional declarations generally mirror the Second Amended Complaint and prior declarations, and raise no new questions of law. Furthermore, the court allowed CCA leave (which the plaintiffs did not oppose) to file up to a fifteen-page sur-reply (which CCA filed) to respond as it saw fit to the plaintiffs' additional declarations. The court is satisfied that CCA has suffered no prejudice. Accordingly, the Motion to Strike will be denied.

The plaintiffs' supporting declarations provide evidence that CCA employees are not compensated for all work performed. Each declaration contains similar factual allegations – namely, that CCA routinely required the employees to perform tasks in excess of forty hours per week. For example, the declaration of Named Plaintiff Anthony Bennett, who worked at CCA from August 2001 through 2006 and from 2007 until January 2012, states that his responsibilities as a Shift Supervisor at CCA's Whiteville Correctional Facility, in Whiteville, Tennessee, included "communicating with the shift manager on the previous shift about anything noteworthy or important that occurred during the prior shift to help with a seamless shift change" and completing "end of shift paperwork and additional paperwork when illegal substances or weapons were confiscated or a fight broke out among the inmates." (Docket No. 28 at p. 7.) Bennett complained to his supervisor about not being compensated for these overtime hours. (*Id*.) His supervisor "agreed that it was a problem, acknowledged that she knew about it, and acknowledged it should be corrected." (*Id*.) However, his supervisor also noted that unpaid overtime was "just part of the job." (*Id*.) Bennett's declaration further states that he discussed this problem with his co-workers and that "[t]hey have experienced the same problem of not being compensated for all hours worked." (*Id*.) Bennett "also witnessed [his] co-workers performing the same or similar compensable work without receiving proper overtime compensation for their hours worked." (*Id*.)

Named Plaintiff Charles Reece, who worked at CCA from 2002 through 2006 and from 2007 until 2014, as an Assistant Shift Supervisor, Shift Supervisor, and Unit Manager at CCA's Hardeman County Correctional Center, in Whiteville, Tennessee, made many similar allegations

in his declaration.[15]  Reece likewise complained to his supervisor, who also acknowledged the

problem and commented, "[t]hat's part of being exempt."  (*Id*. at p. 10.)  Reece, too, claims to

have discussed this matter with co-workers and heard them state that they experienced the same

problem; Reece also claims to have witnessed firsthand co-workers not receiving proper overtime

compensation for their hours worked.  (*Id*.)

Likewise, Named Plaintiff Sara Roberts, who worked at CCA from March 1996 until

October 2011, as a Training Manager at CCA's Hardeman County Correctional Center, in

Whiteville, Tennessee, made many similar allegations in her declaration.  In addition, Roberts

states that she monitored the work hours and attendance of employees as part of her job.  (Docket

No. 29 at pp. 5-6.)  In addition to her regular forty-hour per week schedule, Roberts states that

she "regularly and repeatedly worked from home while . . .  away from [CCA's] facility."  (*Id*. at

p. 6.)  For example, Roberts "remotely accessed [her] work computer to check and send out

emails from [her] work email account, and [she] used [her] personal cell phone to handle work-

related business."  (*Id*.)    Roberts claims that her supervisor was aware that she was not being

compensated for overtime and that she "frequently" discussed the matter with co-workers who

experienced the same problem.  (*Id*.)  Roberts states that she witnessed firsthand co-workers not

receiving proper overtime compensation for their hours worked.  (*Id*.)

The plaintiffs also offer seventeen other declarations of plaintiffs (both Named Plaintiffs

and opt-in plaintiffs), all of whom are former or current employees of CCA.  (*See* Docket Nos.

28-3, 61-1, 61-3.)  Together, these declarants have held all of the CCA Positions during the

---

[15] Reece was not required to "clock in and out," but, rather, had to swipe an identification
badge upon entering and leaving.  (Docket No. 28 at p. 9.)

relevant time period. (*Id*.) All of the declarants have worked at CCA facilities in Tennessee – specifically, Hardeman County Correctional Facility, Whiteville Correctional Facility, West Tennessee Detention Facility, South Central Correctional Center, and Silverdale Detention Facility. (*Id*.) The declarations state that the employees were required to perform additional tasks beyond the scheduled forty-hour workweek, the employees were not compensated with overtime pay, CCA management was aware of the problem and turned a blind eye, and the employees saw their colleagues performing uncompensated overtime work. (*Id*.)

The plaintiffs have also offered the declaration of James Walker. (Docket No. 61-2.) Walker is a resident of Coahoma County, Mississippi, and a current Shift Supervisor at CCA's Tallahatchie County Correctional Facility in Tutweiler, Mississippi. (*Id*. at p. 1.) Walker is not a plaintiff in this action; rather, he is a named plaintiff in a parallel FLSA action brought against CCA in Mississippi. (*Id*.) Walker states that he and his fellow plaintiffs share the same concern as the plaintiffs in this case regarding CCA's actions. (*Id*.) Walker states that he and he co-workers are routinely scheduled for eighty-four hours every two weeks and forty-eight hour per-week shifts, both without overtime pay, and "have all been required to work additional hours for which [they] have not been compensated in order to get [their] respective jobs done." (*Id*. at p. 2.) Walker further states that he has reviewed the declarations of the Named Plaintiffs in this case, and the job duties as described therein are very similar to those of the co-workers involved in the Mississippi litigation. (*Id*.)

The court finds that these declarations provide the "modest factual showing" required for conditional certification of the plaintiffs' proposed class. *See Comer*, 454 F.3d at 547. All together, the plaintiffs have provided twenty declarations of current and former CCA employees,

all of whom allege that CCA's wilful scheduling and employment practices have denied them (and potentially other co-workers) overtime compensation. These declarations show (1) employment with CCA; (2) the various job titles for which certification is sought; (3) performance of similar job duties under each job title regardless of the facility at which they worked; (4) payment of a salary; (5) work performed in excess of forty hours per week; (6) lack of overtime payment by CCA; (7) classification as exempt from the requirements of the FLSA; and (8) job duties and responsibilities that do not meet the requirements of any exemptions to the FLSA. Because the plaintiffs' evidence suggests the existence of a common practice that violates the FLSA, the plaintiffs have met their "fairly lenient" burden to establish that they are "similarly situated" to other CCA employees for purposes of conditional certification. At the very least, the plaintiffs' claims are "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien*, 575 F.3d at 585; *see also Noble*, 2009 WL 1811550, at *10-11 ("When a plaintiff has made the minimal showing required at the notice stage, the defendant cannot overcome [the] [p]laintiff's showing by arguing that individual issues may dominate; rather, that issue must be raised in a motion to decertify at the second stage of the certification process.") (quotation marks omitted) (alterations in original)). The plaintiffs are entitled to pursue this matter further, and, to do so, they need to provide notice of their claims to other CCA employees.

CCA's substantive arguments against certification that are based upon the merits of the plaintiffs' own specific misclassification cases (*i.e.*, that the plaintiffs cannot be similarly situated to others because of weaknesses in the case for their *own* misclassification) are premature. (*See* Docket No. 48 at pp. 15-23.) "Where, as here, plaintiffs have adduced

sufficient evidence to meet step one's 'extremely lenient standard' for conditional certification, evidence offered by the defendant purporting to show plaintiffs are not similarly situated to absent class members, while significant after discovery and during the step-two analysis, does not compel denial of conditional certification." *Benson*, 2010 WL 4922704, at *5 (citing *Gallagher v. Lackawanna Cnty.*, No. 3:CV–07–0912, 2008 WL 9375549, at *9 (M.D. Pa. May 30, 2008)). "[A] court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated." *Bearden v. AAA Auto. Club S., Inc.*, No. 2:11-cv-03104-JTF-dkv, 2013 WL 1181474, *6 (W.D. Tenn. Mar. 18, 2013) (quoting *Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp. 2d 1272, 1277 n.6 (M.D. Ala. 2004)); *accord Burdine v. Covidien, Inc.*, No. 1:10–CV–194, 2011 WL 2976929, at *4 (E.D. Tenn. June 22, 2011) (declining to consider the merits at the conditional certification stage and concluding that the "better approach" is to "ask[ ] only whether the named plaintiffs are similarly situated to the potential plaintiffs"); *Heldman v. King Pharms., Inc.*, No. 3–10–1001, 2011 WL 465764, at *3 (M.D. Tenn. Feb. 2, 2011) (noting that, by arguing at the "first stage" that the plaintiff was exempt from the FLSA, the defendant was "moving prematurely to the merits of [the] action"); *Brasfield v. Source Broadband Servs., LLC*, 257 F.R.D. 641, 642 (W.D. Tenn. 2009) ("At this [first] stage the [c]ourt does not . . . decide substantive issues going to the ultimate merits. . . . "); *Ruggles v. WellPoint, Inc.*, 591 F. Supp. 2d 150, 158 (N.D.N.Y. 2008) (stating that weighing the merits before conditional certification "would invariably defeat the . . . statutory intent to facilitate a broad remedial purpose"); *see also Hoffmann-LaRoche*, 493 U.S. at 174 ("In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, courts must take care to avoid even the

appearance of judicial endorsement of the merits of the action.").  Accordingly, CCA's filing of the actual job descriptions for the CCA Positions, and arguments as to which potential plaintiffs' duties matched those descriptions (and therefore which potential plaintiffs may have been "exempt"), is a premature request for the court to delve into the merits of the plaintiffs' FLSA claims and CCA's defenses.

In sum, the court will grant the Motion for Conditional Certification as detailed herein. *See, e.g.*, *Miller v. Lebanon Golf & Country Club*, No. 3:14-CV-01099, 2014 WL 7359003, at *4 (M.D. Tenn. Dec. 23, 2014) (granting motion for conditional certification where the plaintiffs had met the "low bar" by invoking the common, specific statutory theory that they worked in excess of forty hours per week at a country club without receiving overtime pay); *Benson*, 2010 WL 4922704 at *4 (granting motion for conditional certification and noting that, even if evidence submitted by the defendant tends to contradict the plaintiffs' evidence or reveal potential weaknesses in their case, it does not preclude conditional certification if the plaintiffs' evidence suggests, at a minimum, that some hourly employees have performed uncompensated pre- and post-shift tasks); *Barnwell v. Corr. Corp. of Am.*, No. 08-2151-JWL, 2008 WL 5157476, at *3 (D. Kan. Dec. 9, 2008) (granting motion for conditional certification where plaintiffs asserted they were similarly situated to potential opt-in plaintiff correctional facility employees who were also required to perform pre- and post-shift work without overtime compensation).

## III.  <u>Geographic Breadth of Conditional Class</u>

CCA argues that, if the court allows a collective action to proceed, the court should deny the plaintiffs' request to certify a nationwide class.  CCA contends that the plaintiffs have only provided evidence from CCA employees at local CCA facilities, and that other courts have

denied nationwide certification where plaintiffs have not introduced evidence of nationwide violations. In response, the plaintiffs argue that (1) they have provided declarations from employees at six CCA facilities, five of which are in Tennessee and one of which is in Mississippi; (2) the Second Amended Complaint alleges that CCA's policies and procedures are centrally dictated and implemented through its Nashville, Tennessee corporate offices for all CCA facilities nationwide; (3) similar allegations have been made against CCA in lawsuits in Kentucky, Kansas, and Mississippi – supporting the allegations that CCA's illegal pay practices exist on a national level; and (4) as a general legal concept, working at different geographic locations does not undermine an otherwise sufficient showing of substantial similarity.

The court is not persuaded that, at this time, certification of a nationwide class is appropriate or would serve the interests of justice and efficiency. While the plaintiffs have made the modest showing required for conditional certification of a collective action of current and former employees at CCA's Tennessee correctional facilities, they have not made a similar showing with respect to current and former employees at CCA's other facilities nationwide. The Named Plaintiffs and opt-in plaintiffs (to date) have not worked at any other CCA facility outside of Tennessee. The plaintiffs have offered a declaration from only one current or former employee who worked at any CCA facility outside of Tennessee, and, while the court credits its evidentiary value, the court notes that its declarant is not a plaintiff here, but, rather, a plaintiff in a separate action against CCA in Mississippi. The plaintiffs have provided no declarations from any CCA employees in the other nineteen states or the District of Columbia in which CCA operates, nor do any of the plaintiffs' declarants state personal knowledge as to employment or overtime practices at CCA Facilities nationwide. Nor have the plaintiffs submitted any

declarations concerning overtime policies emanating from CCA's Tennessee headquarters that have an effect on employees nationwide.

In sum, the court cannot, at this time, find that the evidence submitted by the plaintiffs justifies certification of a nationwide class. Accordingly, the court will deny the plaintiffs' request to certify a class including employees of CCA Facilities nationwide. *See Thompson v. RGT Mgmt., Inc.*, No. 2:11-cv-02573-AJT-dkv, 2012 WL 3261059, at *3 (W.D. Tenn. June 8, 2012) (limiting conditional certification to facilities where plaintiff was employed based on lack of supporting affidavits as to employees of other facilities), *adopted at* 2012 WL 3260431 (W.D. Tenn. Aug. 8, 2012); *Ware*, 828 F. Supp. 2d at 954 (denying, without prejudice, certification of nationwide class where declarations were limited to employees of Nashville and Colorado Springs call centers); *Benson*, 2010 WL 4922704 (limiting class to Nashville facility that employed customer service representatives that submitted affidavits); *Bowman v. Crossmark, Inc.*, No. 3:09-CV-16, 2010 WL 2837519, at *6 (E.D. Tenn. July 19, 2010) (denying nationwide collective action where plaintiff lacked affidavits representative of vast geographic area and 12,000 potential employees); *Shabazz*, 2008 WL 1730318, at *5 (denying, without prejudice, plaintiffs' request to extend conditional class of hourly employees beyond defendant's Nashville call center to include employees that worked at its Houston call center, where plaintiffs failed to produce a declaration from any current or former employee who worked at the Houston call center); *see also, e.g., Kesley v. Entm't., Inc.*, No. CV-14-01105-PHX-NVW, 2014 WL 7178378 at *7-8 (D. Ariz. Dec. 17, 2014) (refusing to conditionally certify a class consisting of exotic dancers who worked at six of the defendant's additional cabaret locations in Arizona, North Carolina, and Ohio because the plaintiffs lacked affidavits from dancers regarding the

experiences of working in those "farther-flung" locations, and noting that those employees are "free to present their claims to courts in those states").  The court will therefore limit the conditional class to employees of CCA facilities in Tennessee.[16]

## IV.  Proposed Notice Protocols

FLSA claims are governed by a two-year statute of limitations or, in the case of a "willful violation," a three-year statute of limitations.  29 U.S.C. § 255(a).  The statute of limitations is not tolled for any individual class member until that individual has filed a written consent to join form with the court.  29 C.F.R. § 790.21(b)(2).  The information contained in a notice form is therefore important to allow a prospective plaintiff to understand his or her interests, and a collective action hinges on "employees receiving accurate and timely notice concerning [its] pendency [. . .], so that they can make informed decisions about whether to participate." *Hoffman-LaRoche*, 493 U.S. at 170.

The plaintiffs propose a notice and consent protocol to notify potential opt-in plaintiffs of this action.  The plaintiffs have submitted model notice and consent documents (*see* Docket Nos. 28-1, 28-2) that they contend are based largely upon forms previously approved by a court of this district in a 1996 FLSA case.  (Docket No. 28 at p. 19 (citing *Belcher*, 927 F. Supp. at 252-53).) The plaintiffs contend that the court should authorize the proposed protocols in part because, upon the plaintiffs' information and belief, CCA's attorneys "have already held individual meetings/interviews [with employees] at certain facilities in the state of Tennessee to discuss matters relevant to this litigation, including whether certain similarly situated persons had

---

[16] This limitation shall be without prejudice.  The plaintiffs are free to reapply to the court to broaden the class, should they uncover evidence in discovery that makes such a request appropriate.

knowledge when they were hired of their proposed schedule, what they would be paid and how they would be paid." (*Id*. at p. 20.) Furthermore, the plaintiffs claim that, "[a]t the facilities where individuals were interviewed, they were not advised about the pendency of this lawsuit, were not advised that they could speak to an attorney and were asked to sign paperwork confirming their answers to the questions posed." (*Id*.) Accordingly, the plaintiffs contend that their proposed notice and consent forms are timely and necessary. The plaintiffs also argue that their notice and consent forms are accurate and informative in that they correctly (1) describe the plaintiffs' legal claims, (2) inform potential collective action members of their rights and how they can elect to participate in the action, (3) describe the legal effect of joining the suit, (4) describe the legal effect of not joining the suit, (5) explain that the court expresses no opinion regarding the merits of the plaintiffs' claims or CCA's liability, and (6) state the prohibition against retaliation or discrimination for participation in an FLSA action. (*Id*.)

The plaintiffs propose that the notice and consent forms be mailed by counsel for the plaintiffs via first class mail to all similarly situated current and former employees who worked for CCA in the CCA Positions in the last three years and were allegedly misclassified as exempt from the overtime provisions of the FLSA. (*Id*. at pp. 20-21.) As stated *supra*, the court has imposed the geographical limitation of Tennessee upon this request. Those class members interested in participating would be required to file their consents with the court within a cutoff date, as is consistent with established practice under the FLSA. (*Id*.) In connection with this request, the plaintiffs have moved for an order instructing CCA to disclose a list of addresses for

33

all prospective plaintiffs employed within the last three years.[17]  (*Id*. at p. 22.)  The plaintiffs also request, with the support of exemplar cases, that CCA be ordered to internally post the notice prominently on break room bulletin boards and enclose notices with current employees' next paychecks.  (*Id*. at p. 21.)

CCA rejects the plaintiffs' notice and consent protocol as both objectionable and premature.  CCA contends that the plaintiffs did not confer with it about the proposed notice and consent documents, which CCA argues, with little detail or support, are "deficient in many respects."  (Docket No. 48 at pp. 23-24.)  CCA represents that it has not "had improper communications with members of the proposed collective group (thereby purporting to justify [the p]laintiffs' proposed notice protocol)."  (*Id*. at p. 23 n.9.)  Furthermore, CCA suggests, albeit without any reference to precedent, that the posting of notice at CCA's facilities and the attachment of notices to paychecks would be "inappropriate."  (*Id*. at pp. 23-24 n.10.)

To facilitate class notice, the court will order CCA to provide the plaintiffs with the names and last known addresses of  all similarly situated current and former employees who worked for CCA in the CCA Positions in Tennessee in the last three years.  *See Benson*, 2010 WL 4922704 at *6 (ordering same); *see also Hoffman-LaRoche*, 493 U.S. at 170 (finding that the "[d]istrict [c]ourt was correct to permit discovery of the names and addresses"); *Grayson*, 79 F.3d at 111 (ordering production of mailing list).  Counsel for CCA will deliver this information to counsel for the plaintiffs within fifteen days of the entry of the accompanying Order.

The court has reviewed the proposed notice and consent forms.  While the court is

---

[17] Upon objection by CCA, the plaintiffs have temporarily withdrawn their request for the telephone numbers of those current and former employees.  (*See* Docket No. 61 at p. 7.)

sensitive to the fact that the statute of limitations is running, it was the plaintiffs' decision to file the Motion for Conditional Certification without first meeting and conferring with counsel for CCA regarding the proposed protocol. The result is disagreement between the parties regarding that protocol – albeit one that, based on common practice in FLSA litigation, should be resolved without substantial difficulty. The court will, therefore, order the parties to confer and to submit agreed notice and consent forms within fifteen days of the entry of the accompanying Order. If the parties cannot agree, the plaintiffs shall file their proposed forms, and CCA may file their specific objections thereto, both by the same deadline. The plaintiffs may respond to CCA's objections within five days.[18]

## V.    The Plaintiffs' Request for Equitable Tolling

The plaintiffs also request that the statute of limitations be tolled for putative class members as of the date this motion is granted, so that they will not have their statute of limitations run while the consent forms are being sent to them in the mail. (Docket No. 28 at pp. 21-22.) CCA objects to this equitable tolling request as premature, arguing that the plaintiffs lack standing to seek relief for anyone who has not filed a written consent to join the litigation. (Docket No. 48 at p. 24.) Instead, CCA contends, the plaintiffs should be required to wait and advance equitable tolling arguments at a later stage of these proceedings. (*Id.*)

In certain circumstances, the statute of limitations under the FLSA may be equitably

---

[18] The court takes no position on the plaintiffs' allegations regarding CCA's contacts (proper or improper) with potential class members during the pendency of these motions. The plaintiffs are free to explore any such contacts, to the extent they may have occurred and are relevant to this action, during discovery. However, until the court-supervised notice is issued, the court expects counsel for CCA to take all necessary steps to ensure that no inappropriate communications occur between CCA personnel and prospective plaintiffs regarding this litigation.

tolled. *See, e.g., Myers v. Copper Cellar Corp.*, No. 3:95-CV-541, 1996 WL 766505, at \*3 (E.D. Tenn. Sept. 27, 1996). However, at this juncture, the court does not find it appropriate to rule upon undeveloped statute of limitations issues. "If, at a later stage in this proceeding, CCA advances an argument that certain plaintiffs' claims are barred by the relevant statute of limitations, the plaintiffs may (of course) advance an argument that equitable tolling should apply." *Miller,* 2014 WL 7359003, at \*5; *see also Kutzback v. LMC Intellibound, LLC*, No. 2:13-cv-2767-JTF-cgc, 2014 WL 7187006, at \*13 (W.D. Tenn. Dec. 16, 2014) (declining to grant request for equitable tolling at notice of action and noting that, "[i]f and when potential plaintiffs whose claims would otherwise be time-barred choose to opt into this class, they may apprise the [c]ourt of their circumstances and individually move for equitable tolling"); *Ware*, 828 F. Supp. 2d at 956 (declining to rule on an undeveloped statute of limitations tolling issue at the outset of FLSA collective action).

The plaintiffs also request that the consent forms be deemed "filed" on the date they are postmarked. (Docket No. 28 at p. 21.) CCA responds that this request "contradicts the statute" and suggests that the filing date is the appropriate benchmark. (Docket No. 48 at p. 24 n.10.) In their reply brief, the plaintiffs have provided a number of examples of Tennessee district courts that have allowed notices to be considered filed as of the postmarked date, suggesting there is no statutory conflict. (*See* Docket No. 61 at p. (collecting cases).) This issue should be addressed, and preferably resolved, by the parties during their meet and confer regarding the notice and consent protocol and discussed in the parties' joint report to the court. If not resolved, they may set out their positions at the objection phase outlined above.

## SUMMARY

This Memorandum and the accompanying Order shall have the following effect:

1.      This action will proceed as to all Named Plaintiffs and all CCA Positions.

2.      The court authorizes this action to proceed as a collective action for overtime violations under the FLSA, on behalf of all similarly situated current and former employees of CCA who, during the last three years, (1) were employed in Tennessee, (2) were employed as a Training Manager, Assistant Training Manager, Shift Supervisor, Assistant Shift Supervisor, Unit Manager, Safety Manager, Investigator, or Accountant, and (3) were misclassified as "exempt" from the overtime provisions of the FLSA.

3.      CCA shall, within fifteen days of the date of the accompanying Order, provide a list of names and last known addresses for all putative class members to counsel for the plaintiffs.

4.      Counsel for the plaintiffs and counsel for CCA shall meet and confer regarding the notice and consent protocol and submit a joint report to the court no later than fifteen days after the date of the accompanying order.  If the parties cannot agree on a protocol, by that same date (1) the plaintiffs shall file their proposed notice and consent protocol, and (2) CCA shall separately file specific objections as to points of disagreement (by that same date).  If this occurs, the plaintiffs may file a response within five days.  The court will resolve any disputes and implement a protocol.

## **CONCLUSION**

CCA's Motion to Partially Dismiss Plaintiffs' Second Amended Complaint (Docket No.

37

45) will be denied.  The plaintiffs' Motion for Approval of 29 U.S.C. § 216(b) Notice and

Consent Forms and to Order Disclosure of Current and Former Employees (Docket No. 26) will

be granted in part and denied in part as set forth in this memorandum.  The denial as to

nationwide certification will be without prejudice to the plaintiffs' right to renew that request

should the evidence obtained in discovery warrant such a renewal.  The Motion to Strike (Docket

No. 68) will be denied.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge